This is our first case in the morning, Grotenhuis v. Savoree, 410-0447. For the appellate, Ms. Funderburg. For the appellate, Mr. Myers, you may proceed. Rochelle Funderburg My name is Rochelle Funderburg. I represent the Savorees who are the defendant appellants in this case. This case is a companion to a case that has been argued before this court on September 14, 2010. It arises out of the sale of some auto dealerships to Ken and Marjorie Breyer. And my client, Mark Savoree, guaranteed certain notes that the bank, Casey State Bank, had given to allow this purchase to continue. What happened then, arising out of that particular transaction, was there was a default, ultimately a judgment, and it is arising out of that particular judgment that this case comes before the court. The plaintiff in this case took an assignment of the notes from Casey State Bank and that ended up being a judgment against my clients. And then the plaintiff began to do collection efforts. One of the efforts that has been undertaken is a preliminary injunction to basically freeze certain money in accounts that are now in both my client's name and his wife's name. What happened there was, of course, that the client, Mark Savoree, transferred certain assets to his wife, Karen, in payment of debt that he owed to her. And it's basically that series of transactions that is the subject of the preliminary injunction. Basically, the preliminary injunction is really an extraordinary remedy that should be narrowly granted because effectively what this has done is freeze my client's bank accounts and those of his wife. Four elements, of course, of an injunction are, is there a clearly ascertainable right in need of protection? Does the person have an irreparable harm without the injunction? Is there a lack of an adequate remedy at law? And is there a likelihood of success on the merits? I would say applying those four standards and elements to this case, it's clear that the plaintiff was not entitled to a preliminary injunction on this record. Basically, the plaintiff has a non-final judgment because that judgment, giving rise to the collection efforts, is not final because it's on appeal before this court. And so I would say that while he has a judgment, it's not final and therefore not clearly ascertainable within the meaning of the preliminary injunction statute. Do you have a case that says that? Again, I would say that the plaintiff has adequate remedies at law. When you go to collect a judgment, for example, there are many things that you can do such as a citation, an accounting, wage garnishment, a memorandum of judgment, lease pendants, or any number of things that you can do. There's no evidence before this court or before the trial court that the plaintiff exhausted those remedies. He did do a citation, but that was pretty much it. I would say that essentially what he has done is try to attach some of my client's assets before the judgment is final. So that really is the problem here. Thirdly, he has not established the likelihood of success on the merits. This, of course, is a cause of action for fraudulent conveyance. And of course, Illinois courts have recognized two categories of fraudulent conveyance. One fraud in fact, one fraud in law. Proof of fraud in fact requires a showing of an actual intent to hinder creditors. Here, my client testified, and he was the only witness before the trial court on this injunction. He testified about the transfers. He testified that he did not intend to hinder his creditors or to delay the plaintiff, but instead he transferred the money for debt that he owed his wife and on the advice of his counsel. There was no evidence to the contrary. And if you look at the elements that statute talks about in terms of establishing fraud, there are a number of things that you can consider to determine fraud, which are, was the transfer obligation to an insider? That's true. Did the debtor retain possession or control of the property? No. Was the transfer or obligation disclosed or concealed? No. Before the transfer was made or the obligation incurred, had the debtor been sued or threatened with suit? Yes, as to some. No, as to others. And the reason is because the sale of the business occurred on March the 1st of 2010. In January of 2008, Casey Bank then contacted clients to say, you know, we have this concern about the underlying debt. At that point, the client, my client Mark, guaranteed the leases that his wife had because this was a situation where he owned the business, she owned the real estate. And when they sold the business to the Breyers, the Breyers in turn then leased from the wife. So basically he was then guaranteeing those leases so that the Breyers could continue in the business. It reduced the obligation on his debt or at least the likelihood that they would go out of business because they couldn't pay the lease. Then he signed a note for part of the lease with his wife on March the 1st of 2008. On March the 3rd of 2008, the plaintiff's attorney then sent a letter out about some default or some concern on the Ronin transaction, which was part of this whole deal. And it was after that then that there were several other notes that were signed. But again, they related back to the lease guarantees, which occurred on February the 1st of 2008. And that's important because one of the things you need to consider is when did this debt happen? Did they just cook this up in order to defraud the plaintiff? And the answer is no. That debt occurred prior to the letter that came from the plaintiff's attorney. It's close in time, but it came prior to that. Wouldn't it be reasonable to assume that both of your clients and the bank all knew what was going on so that whether or not a written instrument was delivered, everybody knew that things were going south? Oh, I think actually there's not a lot of information on the record in this case. I think it's not unreasonable to make that assumption. But how bad it was or what needed to be taken, no, I'm not sure you can make any assumptions about that. All this record demonstrated was in January of 2008, the bank made some calls saying these businesses are in trouble. We're going to try to redo the notes that are giving rise to all of this. It wasn't so bad that the bank said we're going to have to just go in and take over. So I'm not sure how that cuts, but I don't think you can make too much assumption regarding that. If you go on to look at the other elements that you have to look at, one of the things, of course, was whether the debtor had been sued or threatened with suit. The guarantees which gave rise to much of the debt really occurred before any of that happened. The transfer was substantially all of the debtor's assets, that's true. The debtor absconded, no. The debtor removed or concealed the assets, no. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred, yes. The debtor was insolvent or became insolvent shortly after the transfer, that's true. And that the transfer occurred shortly before or shortly after a substantial debt was incurred. Well, you know, really on this record, the judgment was not taken against my client until September 1 of 2009. So really the court had all of these things to take into consideration and then had to apply all of that to decide did the plaintiff establish a likelihood of prevailing on the merits for a fraud in law case or a fraud in fact case sufficient to support his claim? Or a preliminary injunction? And I would say that, no, that doesn't rise to that level. He testified about the personal guarantees. He identified the notes. They were all before the court. He described the promissory notes that his attorney had prepared for him. He talked about why this occurred and he testified about his attorney advising he needed to guarantee these matters for his wife so she could continue to make the payments. And maintain the real estate which the auto dealerships that he had sold were leasing. So that was the important reason why that occurred. He also described a transaction in which his wife loaned him money to buy equipment, furniture, and fixtures from the plaintiff because once these dealerships were basically foreclosed on, they took back all the property including the equipment. And what happened was the savories bought that from the plaintiff. In fact, for $100,000 and the plaintiff seeks to set that transaction aside as well. We know what that's valued at. Surely $100,000 was adequate consideration because that's the value that the plaintiff set. He didn't have the money to pay for the equipment, the wife did, so he borrowed it from the wife and the wife took back a note. And now the plaintiff is saying that's somehow part of this fraudulent conveyance. I would say there's adequate consideration, at least for that transaction. He also testified that this wasn't an unusual circumstance because in the past he had borrowed money from his wife for businesses and his attorney had prepared notes which he subsequently paid off. He managed various properties for his wife. They were called Wolf Street Management, Savory Properties Paris, Savory Properties Charleston, and the Savory Farms. These are all rental properties or properties that he manages for his wife. Essentially what happened here was the trial court had before it a series of notes and transactions and Mr. Savory's testimony which actually stood uncontradicted. He did have the right to pay legitimate debts and the mere preference of one predator over another does not constitute a violation of the statute prohibiting fraudulent transfers. And of course for that the infamous case or famous case is the Crawford County State Bank v. Doss. Now I do acknowledge that there must be scrutiny when there is a transfer to a relative, but there's nothing that says you can't transfer to a relative for adequate consideration. And these things, many of them occurred prior to judgment being taken against my client and certainly before the letter came out saying we're going to be starting down this process. On this record then I would say that the plaintiff has failed in his burden regarding a preliminary injunction which is an extraordinary remedy and we would ask that the court approve this. Thank you. We'll hear from you in a moment. Good morning. May it please the court counsel, my name is James Richard Myers. I represent the appellee in this case, Stanton Brogan-Heiss. I see that a couple of the justices are familiar with this case from the prior argument that my partner Larry Lefevre gave in the underlying case. That underlying case gave rise to a judgment of just under $2.75 million. During efforts to collect that judgment, Stanton Brogan-Heiss learned that Mark Savory had transferred over $3 million to his wife Karen. This case was brought by Stanton Brogan-Heiss to set aside those transfers on the grounds they were fraudulent. I think factually counsel has stated things that aren't in the record and specifically the funds that we're talking about in this case are all in Karen Savory's name. If they were in Mark Savory's name we would have gotten garnishments, we would have gotten internal orders, we would have gotten things like that to collect on the judgment. In this case there was a citation, that citation came up empty. There's also testimony in this record that Mark Savory currently has no money available to pay this judgment. So the exercise of legal remedies both to obtain a judgment on the guarantees and on the notes and then to collect on that judgment have been exercised by Stanton Brogan-Heiss. He is now availing himself of equitable remedies. The equitable remedy being the attempt or the allegation to set aside the fraudulent transfer of certain assets that belong to Mark or at least were in Mark's name to his wife Karen. And in the pleadings in this case we don't ask for judgment. We don't ask for monetary judgment. We don't ask for legal relief. We ask for this court, not this court, but the trial court to set aside the fraudulent conveyances and attach those proceeds that we believe belong to Mark that he has hidden in his wife's name. That's the purpose for this case. The issue for this court is whether the trial court abused its discretion in entering a preliminary injunction. This is an interlocutory appeal of a preliminary injunction entered against the Savory's. That preliminary injunction prohibited the Savory's from transferring funds prior to the final resolution of the case. The record will show that there was a temporary restraining order entered without notice to the Savory's that prohibited them from transferring any asset. After the hearing in the preliminary injunction case, Judge Lewis isolated or identified $2.2 million of the Savory's assets being an amount he determined to be enough to protect Mr. Groten-Heiss's judgment, which is for less than that, during the pendency of the case. The standard of review in the case is abuse of discretion. And an abuse of discretion occurs when no reasonable person can take the view adopted by the trial court. Therefore, the court here needs to ask itself whether the trial court's entry of a preliminary injunction in this case is something no reasonable person would do. And I submit that it is not. The main argument raised, at least I see two main arguments raised against the entry of the preliminary injunction. The first is that somehow the judgment in the underlying case is not final. And I understand that that judgment is on appeal here in this court. But when that judgment was appealed, Mark Savory had an opportunity to file a bond that would protect the judgment. And if that bond was filed, there would be no collection efforts. All collection efforts would be stayed pending the resolution of the appeal. He didn't do that. In that underlying case, there was also a judgment against Karen Savory, which she paid. So we can't collect on Karen because her judgment is paid. We don't have any monetary judgments against Karen. But in the underlying suit against Mark, he did not file a bond. That was his choice. And therefore, under the law and under the reasoning in the current case that's cited in our brief, the law being Supreme Court Rule 305A, Stanton Grotenheiss has the right to collect his judgment. And he's been doing that. He tried through the citation process. He has another lawsuit on file in another county for fraudulent conveyances. And then he has this particular case to set aside fraudulent conveyances that we know were made to his wife. We allege are fraudulent. So I don't think you can stand here and say I appealed it so you can't collect when there's a process available that would prevent Stan from collecting and stop this whole fraudulent conveyance suit from going on if you post a bond. The other issue that I think is raised is the argument that Stan can't prevail on the merits in the case or failed to prevail on the merits in the case. And as far as that argument goes, in the preliminary injunction stage, he's not required to prove the case. He doesn't have to go to trial on the merits and win. He has to show there's a fair question as to his rights and that the status quo needs to be preserved pending the final outcome of the case. And I would submit to the court that there is an adequate basis for Judge Lewis to decide that there is a fair question here as to whether or not these are fraudulent conveyances, regardless of the evidence that Mr. Savory put forward. If you look at his testimony as outlined in our brief and in the record, you can see that he admits he transferred this money. You can see he admits he transferred to his wife. You can see he admits he's insolvent. You can see all those things. And specifically, he says he did all these things after he knew that the business whose loans he guaranteed was having financial trouble. And the transfers were to his wife. And I think in Judge Lewis's findings, he found that those should be scrutinized. And in this case, it raises questions when you transfer significant assets to your wife as to whether you're doing that to avoid judgments. And I believe that if you look at all those facts, Judge Lewis reasonably decided that there was a fair question there, that Stan would ultimately prevail in the case, and that the status quo needs to be preserved. And the status quo needs to be preserved, again, because all this money is in Karen's name, or at least it was. I don't know where the money is anymore, because if you can see from the supplement to the record, some of the accounts specifically identified in the injunction are now empty. There's no money in them. So of the $2.2 million that was supposedly frozen, there's only about $1.3 million or $1.4 million that's actually frozen, because the accounts at Grissom Bank have zero balances. And if an injunction is not entered in a fraudulent conveyance case like this, we'll never catch up with the money, because who knows where it goes. And we can't sue Karen directly. We have to sue Mark and get the conveyance set aside. And if we get this one done, then we've got to go find the money again and set it aside and continue on and on. So I think it's reasonable for Judge Lewis to say, you know, we've got suspicion of fraudulent conveyances. We've got an allegation of fraudulent conveyances at a minimum. And so we need an injunction to preserve the status quo and prevent further possible fraud. That's the reasoning in the farm credit versus LEND case that we have cited in our brief. How about the $100,000 for repurchase of the equipment? If, in fact, Mark borrowed money from his wife and signed a note and actually received the money, he probably did receive adequate consideration for his note. And he probably did. And if that's the case, and that comes out through the discovery process that, in fact, he did get money from his wife instead of just signing guarantees on leases that were a year old and signing notes for money that was already his, then I think that would drop out and that $100,000 would not be a fraudulent transfer. But I don't know that, because all I know is what Mark testified to at the hearing on the preliminary injunction. Unless there's other questions, I don't have any other argument. I think that, again, it's an abuse of discretion standard, and the record in the case supports Judge Lewis's decision to enter this preliminary injunction. The record's not that void of facts that would make his judgment an abuse of discretion, and we'd ask that the trial court be affirmed in this case. Thank you. Rebuttal? Very briefly. I'm not arguing that he doesn't have a legal right to pursue his judgment. The client chose not to file a bond for whatever reason. And so, sure, they can go after it legally. What I'm saying is that preliminary injunction is not the way to go. I would also say that at least one of the notes my client testified to was for money that he paid for legal services, and that was $90,600. So there were several instances of notes being paid and taken for things that actually he got consideration for and gave consideration for. This is not a case where basically they have just emptied everything, reduced it to cash, and sent it to Cayman Islands, for example. You know, when I looked at the various cases that talked about fraudulent conveyance, one of the things the courts, when they discuss those, talk about is, is it a secret thing? Have they done this in collusion? That's a big deal for the courts. And on this record, no. None of this was done in secrecy or collusion. And another thing the courts take into consideration when they were talking, this court when it rendered the DOS decision said, well, have you liquidated everything, turned it into cash, and then given the cash away or spent it down or whatever? And that's really not the kind of case that we're talking about here either. You know, most of the time when you look at a preliminary injunction, you're talking about things like trade secrets, customer lists, things like that. Things that are unique and so valuable and damaging if you don't issue a preliminary injunction, there will be damage without recourse. And that's really not what we're talking about here. The trial court really focused on an old Supreme Court case that was cited by the plaintiff called Lanyon, found at 223 Illinois 616. It's a 1906 case for the proposition that a court may grant equitable relief when a party is financially irresponsible. But really when you take a look at the fact pattern in the Lanyon case, what you find out is that that's really an exclusive and a non-compete case. Because really what happened there was the plaintiff, who was a fireclay seller, whatever that is, contracted with the defendant, a landowner, to buy fireclay located on the defendant's land at a specified quantity per day. And in return, the defendant also agreed not to sell fireclay to anyone else. They had an exclusive license, if you will, and a non-compete, essentially. And then what happened was he turned around and sold the land to a third party. And so the Supreme Court basically said, well no, you can't do that. You cannot, because the plaintiff couldn't sue a third party. He wasn't a party to the contract. So basically the Supreme Court concluded that the plaintiff there was entitled to equitable relief because the defendant had to be prevented from doing that which he had covenanted not to do. It's not the kind of case that we're talking about here. That's really a non-compete and a license kind of case. And so really if you look at that, and that is the case that the trial court focused on and said, that supports what I'm doing here. I would say when you look at this record overall, you'll find that we have met our burden. It's a high burden, I agree, but we've met our burden. We would ask the court to reverse.